**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JOSHUA LAVAR SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-82 JMB |
| | ) | |
| UNKNOWN CLARKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**OPINION, MEMORANDUM AND ORDER**</u>

This matter is before the Court on the motion of self-represented plaintiff Joshua Lavar Scruggs, an inmate at the Northeast Correctional Center (NECC), for leave to commence this civil action without payment of the required filing fee. [ECF No. 3]. Having reviewed the motion and the financial information submitted in support, the Court has determined plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $22.50. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action for failure to state a claim.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the motion for leave to proceed in forma pauperis, Plaintiff submitted a copy of his certified inmate account statement. [ECF No. 5]. A review of plaintiff's account indicates an average monthly deposit of $112.54 and an average monthly balance of $81.58 Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $22.50, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

On October 28, 2024, self-represented Plaintiff Joshua Lavar Scruggs filed the instant paction on the Court's Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff is currently incarcerated at the Northeast Correctional Center (NECC). He brings his claims against correctional officers Unknown Clarkson and Unknown Grant in both their official and individual capacities. Both Clarkson and Grant are alleged to be employed by the Missouri Department of Corrections (MDOC).

Plaintiff alleges that on or about October 27, 2023, at NECC Correctional Officer Clarkson "directed a C.O. to place and handcuff [him] to a specific bench in the middle of the wing."[1] Plaintiff states in a conclusory manner that Clarkson "failed to make sure that [he] was not left handcuffed to the bench for more than 2 hours straight" "without giving [him] an opportunity to urinate."[2] Additionally, plaintiff asserts that he was kept handcuffed to the bench for

---

[1]Plaintiff appears to be asserting that he was handcuffed to a bench in the Administrative Segregation Unit, known as, "1-House, C-Wing." He does not indicate why he was handcuffed to the bench, or which officer actually handcuffed him to the bench at the direction of Officer Clarkson.

[2]By referencing a failure to check on him every two hours, plaintiff appears to be referring to a Missouri Department of Corrections (MDOC) Policy relating to restraints. Plaintiff, however, has not identified the specific policy he is referring to. And a breach of a MDOC policy does not equate with a constitutional violation.

approximately six hours. Plaintiff insists in a conclusory manner that both Clarkson and Grant denied him a lunch tray while he was handcuffed to the bench, but he fails to describe these interactions within the body of his complaint, making only the unsupported allegation, itself. Thus, it is unclear if plaintiff sought and was denied a lunch tray from defendants or if he is complaining that defendants negligently failed to bring him a lunch tray.

Plaintiff asserts that the housing unit surrounding his bench was busy during the hours that he sat restrained. Nonetheless, it was not until he had been on the bench for approximately five hours that he saw Officer Grant and asked him why no one had provided him an opportunity to urinate. Plaintiff claims that Grant ignored his question and walked away. Plaintiff, however, fails to actually indicate that he asked to use the restroom. He states only that he asked why no one had provided him "an opportunity to urinate."

Plaintiff does not describe any alleged interactions with Officer Clarkson relative to a food or bathroom request. Furthermore, he does not indicate if he sought permission to use the restroom from anyone in the "busy" housing unit, or if he asked for food from anyone who passed him by. Plaintiff also fails to explain why he believes it was the responsibility of defendants to bring him food or offer a bathroom break.

Despite the lack of factual assertions, plaintiff asserts generally that after the events of October 27, 2023, he suffered blood in his urine and pain with urination. Plaintiff fails to indicate why he connects the events of October 27th to his urinary issues. And he does not specify if he asked to see a medical provider immediately after the incident, but he claims that he made complaints to an unknown person in medical on or about November 3, 2023, regarding his urinary issues. He was not seen until December 7, 2023, by a medical provider, but he fails to identify a medical diagnosis. He claims, however, that in December of 2023, he was prescribed some over-

the-counter medications for constipation and GERD, as well as the prescription medication Prednisone. Plaintiff does not state why he was prescribed Prednisone for a urinary issue.

For relief, plaintiff requests damages in the amount of $1,000,000.

## Discussion

Having carefully reviewed the complaint, the Court concludes that plaintiff's claims against defendants are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A.  Official Capacity Claims

Section 1983 provides that a person who, under color of state law, deprives an individual of his constitutional rights may be held liable for the deprivation. Bringing suit based on § 1983 against a government official (such as a prison correctional officer) in his official capacity is the equivalent of bringing suit against the government entity that employs the official. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (a "plaintiff who sues public employees in their official . . . capacities sues only the public employer").

Plaintiff alleges defendants Clarkson and Grant are employed by the MDOC, which is an agency of the State of Missouri. As noted above, plaintiff's official capacity claims against each defendant are really claims against their employer. As such, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (a "State is not a person

- 5 -

under § 1983"); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) ("a state is not a person for purposes of a claim for money damages under § 1983").

Additionally, the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on a nonconsenting State from lawsuits brought in federal court by a State's own citizens or the citizens of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 2018 WL 2070564, at *1 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a State waives its immunity to suit in federal court. *Id.* at 65. A State will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987).

Neither exception applies in this case. First, there is no congressional abrogation of Eleventh Amendment immunity. Plaintiff brings this action pursuant to § 1983. The United States Supreme Court has determined that 42 U.S.C. § 1983 does not revoke the States' Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not consented to the suit. Specifically, the State's statutory waiver of immunity does not include the type of claims made by plaintiff in this case. *See* Mo. Rev. Stat. § 537.600.

Thus, because a state is not a "person" for the purposes of § 1983 and a suit against the state is barred by the Eleventh Amendment, plaintiff's official capacity claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

### B.  Individual Capacity Claims

It is not entirely clear whether plaintiff is alleging an excessive force claim for being handcuffed to the bench, or if he is asserting an unlawful conditions of confinement claim. As a result, the Court will analyze both claims.

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). "In a § 1983 case an official 'is only liable for his ... own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 534-35 (8th Cir. 2009) (en banc) (alterations in original) (citation omitted).

"'After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' What constitutes the 'unnecessary and wanton infliction of pain' varies based on the alleged constitutional violation." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted). For an excessive-force claim, "[w]henever prison officials stand accused of using excessive physical force ... the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citation omitted). In conducting this inquiry, the Court looks at "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (alteration in original). In determining whether defendants' actions violated plaintiff's Eighth Amendment right to be free from excessive force, the core judicial inquiry is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Gutzmer*, 866 F.3d at 974 (citations omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.,* they are using it maliciously and sadistically." *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (citation omitted). Mere negligence—even gross negligence—cannot support a constitutional claim. *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

In contrast, for a conditions-of-confinement claim, "[t]he Eighth Amendment standard ... is whether the defendants acted with deliberate indifference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citation omitted). "Deliberate indifference ... is the equivalent of criminal recklessness: the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hodges v. Minn. Dep't of Corr.,* 61 F.4th 588, 592 (8th Cir. 2023) (citation omitted). Deliberate indifference is found

where the official "actually knows of the substantial risk and fails to respond reasonably to it. This standard incorporates 'due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Id.* (citation omitted).

In this case, plaintiff states that Officer Clarkson "directed a C.O. to place and handcuff [him] to a specific bench in the middle of the wing." He fails to indicate who the alleged officer was who placed him on the bench. As a result, the Court cannot find that Officer Clarkson is responsible for the alleged unlawful behavior in this instance. *See Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024) (respondeat superior and other theories of vicarious liability do not apply in a section 1983 suit). Plaintiff does not indicate that Officer Grant was involved in his placement on the restraint bench, thus, the Court cannot find that he was responsible for the alleged excessive force.

Although plaintiff claims in a conclusory manner that Officers Grant and Clarkson failed to provide him lunch and /or "the opportunity to urinate" during his six hours on the restraint bench, his allegations surrounding these claims are entirely conclusory. For example, he fails to indicate whether either individual was expected to bring him a lunch tray, or whether he asked for a lunch tray and was denied the tray, or whether it was simple negligence that caused defendants to forget to feed him lunch on that date. Under an excessive force claim, a plaintiff must allege that a defendant acted maliciously, and for a conditions of confinement claim, a plaintiff must allege that a defendant acted with deliberate indifference. Although plaintiff states in a conclusory manner that defendants acted "on purpose," he has failed to allege a serious harm in this instance. Simply asserting that he missed his lunch on one occasion cannot allow this Court to infer serious harm or maliciousness under either Eighth Amendment standard.

Similarly, plaintiff fails to allege that he actually asked defendants to use the bathroom during his time on the restraint bench. He states only that he asked defendant Grant why no one

- 9 -

had given him "an opportunity to urinate." Plaintiff's failure to actually ask to use the restroom and be denied the ability to use the restroom by defendants is again fatal to his claims for excessive force and unlawful conditions of confinement, *i.e.,* plaintiff fails to state that he needed to use the bathroom and was denied the opportunity by defendants due to their malicious and sadistic behavior or because they were deliberately indifferent to his serious harm. Indeed, plaintiff fails to allege in his complaint that he needed to use the restroom, was denied the ability to use the restroom, and he was harmed as a result of needing to use the restroom. Although he claims that he later (on or about November 3, 2023), began to have unspecified urinary issues, plaintiff has failed to connect the events detailed in the complaint to these unspecified urinary issues. Plaintiff's purported "damages" appear too tenuous to meet the injury requirement under 42 U.S.C. § 1983. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (an action pursuant to 42 U.S.C. § 1983 is a tort claim, and a plaintiff must suffer some actual injury before he can receive compensation).

Furthermore, the Court's finding that plaintiff has failed to meet the standards under the Eighth Amendment are borne out by Eighth Circuit caselaw relating to prisoner restraints. For example, in *Key v. McKinney*, the Court of Appeals upheld judgment in favor of correctional officers on conditions of confinement claim where the plaintiff alleged that, pursuant to facility policy, he had been shackled for twenty-four hours with routine checks by a nurse and correction officers, concluding that no Eighth Amendment violation occurred. 176 F.3d 1083, 1085-86 (8th Cir. 1999).

In *Gutzmer*, 866 F.3d at 974, the Eighth Circuit held that a prison official was entitled to qualified immunity on an excessive-force claim when he restrained an unruly prisoner on a restraint board for up to four hours, in compliance with correctional facility policy, because there was no evidence that the use of the restraint board was a wanton and unnecessary infliction of pain. *Id*. at 977. There, the Court also remarked that "punishing an inmate 'to preserve internal order

and discipline and to maintain institutional security' does not violate the Eighth Amendment unless the punishment or force used is 'repugnant to the conscience of mankind.'" *Id.* at 978 (citation omitted).

Further, where the Eighth Circuit has found that correctional officials were not entitled to qualified immunity, the duration of the restraint differed markedly from the alleged duration of the restraint here. *See Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam) (concluding that prison officials were not entitled to qualified immunity after prisoner was restrained on a bench for twenty-four hours with no access to food, water, or a restroom because triable issues existed as to whether imposing such conditions was excessive and constituted a disproportionate use of force).

In light of the aforementioned, the Court finds that plaintiff's claims against defendants in their individual capacities are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. [ECF No. 2]. The motion will be denied as moot because this action is being dismissed without prejudice. *See* 28 U.S.C § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $22.50 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 19th day of February, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE